**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

In re:

PETER BERMAN,

Debtor.

-----------------------------------------------------------x

Chapter 11

Case No. 26-35167 (KYP)

**MEMORANDUM DECISION RESOLVING (I) DEBTOR'S MOTION TO REDUCE AND RECLASSIFY ALLISON BERMAN'S PROOF OF CLAIM, AND (II) DEBTOR'S MOTION TO COMPEL ALLISON BERMAN TO CONVEY HER INTEREST IN CERTAIN REAL PROPERTY TO THE DEBTOR**

**APPEARANCES:**

GENOVA, MALIN & TRIER LLP
*Counsel to the Debtor*
Hampton Business Center
1136 Route 9
Wappingers Falls, NY 12950
By: Michelle L. Trier, Esq.
Of Counsel

ALLISON BERMAN
*Pro Se Creditor*
48 Orchard Street
Warwick, NY 10990

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Chapter 11 debtor Peter Berman ("Debtor") has moved to reduce the amount of the proof of claim ("Claim")[1] filed by his ex-spouse Allison Berman ("Ms. Berman") and

---

[1] *See* Claim No. 11-1.

to reclassify the Claim as a general unsecured claim ("Claim Motion").[2] The Debtor has also moved to compel Ms. Berman to convey her interest in real property located at 7 Masters Court, Warwick, NY ("7 Masters Court") to the Debtor ("Conveyance Motion," and together with the Claim Motion, the "Motions").[3] Ms. Berman objects to both Motions.[4]

## JURISDICTION

This Court has jurisdiction over the matters presented pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference (M-431), dated January 31, 2012 (Preska, C.J.) referring bankruptcy cases and proceedings to the Bankruptcy Judges of the Southern District of New York. The Conveyance Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (L), and (O). The Claim Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). Moreover, by filing the Claim, Ms. Berman has submitted to the equitable jurisdiction of this Court to adjudicate "any issue that bears directly on the allowance" of the Claim. *Germain v. Conn. Nat'l Bank*,

---

2 *See Debtor's Motion Objecting to Claim No. 11 Pursuant to 11 U.S.C. § 502 and Federal Rule of Bankruptcy Procedure 3007 with Points of Law*, dated June 5, 2026 ("Debtor Claim Brief") (ECF Doc. # 28); *see also Supplemental Statement in Support of Debtor's Motion Objecting to Claim No. 11 Filed by Allison Berman*, docketed on July 15, 2026 ("Debtor Claim Reply") (ECF Doc. # 39). "ECF Doc. # _" refers to documents filed on the electronic docket of this bankruptcy case. "ECF p. _" refers to the page number imprinted across the top of the page by the Court's electronic filing system.

3 *See Affirmation in Support of Motion Pursuant to Federal Rule of Bankruptcy Procedure 9014 Compelling the Debtor's Ex-Spouse to Comply with the Pre-Petition Judgment of Divorce by Conveying Her Interest in Real Property Located at 7 Masters Court, Warwick, New York to the Debtor with Points of Law*, dated July 2, 2026 ("Debtor Conveyance Brief") (ECF Doc. # 35).

4 *See Declaration of Allison Berman in Support of Response to Rule 3007 Claim Objection*, docketed on July 1, 2026 ("Ms. Berman Claim Brief") (ECF Doc. # 32); *Claimant Allison Berman's Response to Debtor's Supplemental Statement in Support of Objection to Proof of Claim No. 11*, docketed on July 21, 2026 ("Ms. Berman Claim Reply") (ECF Doc. # 42); *Objection of Allison Berman to Debtor's Motion Under Federal Rule of Bankruptcy Procedure 9014 to Compel Conveyance of Her Interest in 7 Masters Court, and Declaration in Opposition*, dated July 10, 2026 ("Ms. Berman Conveyance Brief") (ECF Doc. # 38).

988 F.2d 1323, 1329 (2d Cir. 1993) (emphasis omitted); *see also Lagenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power.") (citation and internal quotation marks omitted).

## **BACKGROUND**

The Debtor and Ms. Berman married in September 2001. On March 18, 2021, the Debtor commenced an action against Ms. Berman in the Supreme Court of the State of New York, County of Orange ("State Court"), to dissolve the marriage. *See Berman v. Berman*, Index No. EF001730-2021 ("Divorce Action"). The Divorce Action was heavily litigated and culminated in a ten-day trial held between January and April 2024, in which both sides were represented by counsel and retained experts to opine on the value of marital property. On December 3, 2024, the State Court issued its *Post-Trial Decision* ("Original Decision")[5] ruling on the equitable distribution of marital property between the Debtor and Ms. Berman and the monthly maintenance and child support obligations of the Debtor. On January 15, 2025, the State Court issued its *Amended Post-Trial Decision* ("Amended Decision")[6] modifying certain of its rulings from the Original Decision. On March 13, 2025, the State Court entered the *Judgment of Divorce* ("Divorce Judgment"),[7] which tracked the rulings in the Amended Decision. The

[5] A copy of the Original Decision is attached as Exhibit 1 to the Ms. Berman Claim Brief.

[6] A copy of the Amended Decision is attached as Exhibit B to the Debtor Claim Brief.

[7] A copy of the Divorce Judgment is attached as Exhibit A to the Debtor Claim Brief.

substance of the State Court's rulings is described below in conjunction with this Court's ruling on the instant Motions.

The Debtor filed a petition under Chapter 11 of the Bankruptcy Code on February 17, 2026. On April 20, 2026, Ms. Berman filed her Claim in the amount of $1,213,923.80 and asserted that the Claim was entitled to priority as a domestic support obligation under 11 U.S.C. § 507(a)(1). (Claim, Part 2, Question 12.) The Debtor filed the Claim Motion on June 5 and the Conveyance Motion on July 2, the Court heard oral argument on July 21 and took the matters under advisement.

## DISCUSSION

### A. Claim Motion

#### 1. Claim Amount

The first branch of the Claim Motion seeks to reduce the amount of Ms. Berman's Claim. Under section 502(a) of the Bankruptcy Code, a proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). A properly filed proof of claim is "prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f). "The burden then shifts to the claimant if the objector produces evidence equal in force to the prima facie case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Creamer v. Motors Liquidation Co. GUC Tr.* (*In re Motors Liquidation Co.*), No. 12 Civ. 6074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (citation, internal quotation marks, and alteration omitted). "When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd sub nom.*

*Peter J. Solomon Co., L.P. v. Oneida Ltd.*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010).

Ms. Berman's Claim is based on the State Court's rulings in the Divorce Action. (Ms. Berman Claim Brief ¶ 1.) The Amended Decision discussed Ms. Berman's entitlement to marital property as well as maintenance and child support, and the rulings germane to the amount of her Claim are discussed in the sections that follow.

**a. 7 Masters Court and 48 Orchard Street**

7 Masters Court previously served as the marital home, the property is deeded to both the Debtor and Ms. Berman, and the Debtor currently resides there. The State Court averaged the appraisals provided by the parties' respective experts and valued 7 Masters Court at $1,005,000. (Amended Decision at 9.) However, the mortgage lender was owed $348,077, and a HELOC lender was owed $67,275. (*Id.*) Thus, the remaining equity in the property was $589,648, resulting in the Debtor and Ms. Berman each being entitled to $294,824 of equity in the property. (*Id.*)

Real property located at 48 Orchard Street, Warwick, NY ("48 Orchard Street") is deeded solely to Ms. Berman, and she currently resides there. The State Court largely credited Ms. Berman's expert's valuation of this property and valued it at $530,000. (*Id.* at 8.) Thus, the Debtor and Ms. Berman were each entitled to $265,000 of equity in the property. (*Id.*)

The State Court then credited Ms. Berman for the difference in the equity values of 7 Masters Court and 48 Orchard Street. Since her equity in 48 Orchard Street ($265,000) was less than the equity to which she was entitled for 7 Masters Court ($294,824), the State Court directed the Debtor to pay Ms. Berman the difference, *i.e.*, $29,824. (*Id.* at 9-10.)

The State Court's calculation of the amount owed to Ms. Berman was based on the presumption that the Debtor was entitled to keep 7 Masters Court and Ms. Berman was entitled to keep 48 Orchard Street. Since 48 Orchard Street was already deeded to Ms. Berman, the Divorce Judgment simply provided that she would "retain sole title" to 48 Orchard Street. (Divorce Judgment at 2.) However, 7 Masters Court was deeded to both parties. Therefore, the Divorce Judgment directed Ms. Berman to convey her interest in the property to the Debtor within 30 days:

> [The Debtor] is hereby awarded sole title to [7 Masters Court] and shall be solely responsible for the mortgage thereon, [Ms. Berman] shall sign a deed conveying her interest in that property to [the Debtor] within 30 days of the entry of [the Divorce Judgment.]

(*Id.*)

As of this writing, Ms. Berman has not conveyed her interest in 7 Masters Court to the Debtor. By the Conveyance Motion, the Debtor has moved to compel Ms. Berman to convey her interest in 7 Masters Court to the Debtor. The Court will resolve this issue *infra* in its discussion of the Conveyance Motion.

Assuming Ms. Berman conveys her interest in 7 Masters Court to the Debtor, she is entitled to a claim against the bankruptcy estate in the amount of **$29,824** ("Marital Home Credit") corresponding to the difference in her equitable share in 48 Orchard Street and her equitable share in 7 Masters Court.

#### b. Vermont Property

The Debtor and Ms. Berman owned a vacation home located at 18 High Point Drive, #503, Stratton, VT ("Vermont Property"), which is deeded to Ms. Berman. The State Court valued the Vermont Property at $498,000, resulting in each party being entitled to $249,000 of equity in the property. (Amended Decision at 10-11.) The

Divorce Judgment provided that Ms. Berman "shall retain sole title" to the Vermont Property. (Divorce Judgment at 2.) The Divorce Judgment gave two options to promptly divide the equity in the Vermont Property. Initially, each party had the right to buy out the other's share for $249,000 within 60 days of the entry of the Divorce Judgment. (*Id.* at 2-3.) If neither party exercised their buyout option, the "property shall be listed for sale with a licensed real estate broker, mutually agreed upon by the parties," by April 15, 2025 with the net sale proceeds split evenly between the Debtor and Ms. Berman. (*Id.* at 3; *see also* Original Decision at 11 (same); Amended Decision at 11 (same).)

On December 4, 2024, the Debtor's attorney wrote a letter ("December 4 Letter")[8] to Ms. Berman's attorney stating that the Debtor was "not interested" in buying out Ms. Berman's share of the Vermont Property and asked whether Ms. Berman intended to buy out the Debtor's share or list the property for sale. (December 4 Letter at 1.) The letter also waived the Debtor's right to participate in choosing a real estate agent in the event of a sale:

> If [Ms. Berman] intends to list the property for sale, my client does not intend to participate in that process as he is not a deeded owner of the property. So long as [Ms. Berman] engages a duly licensed real estate agent for the sale and sells the property to a third party in an arm's length market value transaction, [the Debtor] will not assert any objections.

(*Id.*)

The record does not indicate whether Ms. Berman's attorney responded to the December 4 Letter. Instead, on January 3, 2025, Ms. Berman's attorney wrote a letter

---

[8] A copy of the December 4 Letter is attached as Exhibit C to the Debtor Claim Brief.

("January 3 Letter")[9] to the Judge presiding over the Divorce Action stating Ms. Berman's intent to exercise her right to buy out the Debtor's share of the Vermont Property. (January 3 Letter at 1.) But Ms. Berman's buyout proposal was different than the State Court's ruling. Rather than offer to buy out the Debtor's interest at $249,000, Ms. Berman's attorney sought to take (i) a $58,914 credit for purported carrying costs and taxes paid, and (ii) a $196,006 credit for her share of equity in Eco Green Community Housing Fund, LP. (*Id.*) According to Ms. Berman's attorney, these credits reduced the price at which Ms. Berman could buy out the Debtor's share from $249,000 to $80. (*Id.* (Stating that these credits leave "[Ms. Berman] owing [the Debtor] $80 for his equity.").)[10]

The record does not indicate if the State Court responded in any way to Ms. Berman's buyout proposal reflected in the January 3 Letter. Instead, the State Court subsequently issued the Amended Decision and entered the Divorce Judgment, which made no mention of Ms. Berman's $80 buyout offer and affirmed the Debtor's $249,000 equity share in the Vermont Property.

Under the circumstances, the Debtor is entitled to reduce the Claim by $249,000. The December 4 Letter made clear that the Debtor was not interested in exercising his buyout option. Being that he was not the deeded owner of the Vermont Property, the Debtor could not post the property for sale or execute documents necessary to effectuate a sale. The only right the Divorce Judgment gave to the Debtor regarding a prospective

---

[9] A copy of the January 3 Letter is available at ECF Doc. # 32 at ECF pp. 63-64.

[10] Ms. Berman's attorney's calculations are incorrect. The credits he proposed to take add up to an amount greater than the Debtor's $249,000 equity share ($58,914 + $196,006 = $254,920) and would leave the Debtor with zero remaining equity.

sale was in choosing a mutually acceptable real estate broker. But he waived that right in the December 4 Letter. Rather than engage with the Debtor's attorney following the December 4 Letter, Ms. Berman's attorney asked the State Court to allow Ms. Berman to purchase the Debtor's share in the Vermont Property for $80 – a request the State Court apparently ignored.

Ms. Berman further argues that the Debtor's equitable share in the Vermont Property should be reduced by amounts that are continuing to accrue under the State Court's December 14, 2022 *Decision and Order* ("Pendente Lite Order").[11] Under that order, the State Court directed, among other things, that the Debtor pay the carrying charges for the Vermont Property pending conclusion of the litigation. (Pendente Lite Order at 7.)

Ms. Berman's argument fails. Under New York law, a pendente lite order that is superseded by a divorce judgment has "no effect after entry of the judgment." *Flynn v. Flynn*, 124 A.D.2d 699, 699 (N.Y. App. Div. 1986) (citing supporting authorities), *denying re-argument and leave to appeal*, 128 A.D.2d 583 (N.Y. App. Div. 1987). Here, the Pendente Lite Order was superseded by the Divorce Judgment. The Divorce Judgment called for an expedient division of the Vermont Property through a buyout or sale. The Divorce Judgment made no mention of amounts outstanding under the Pendente Lite Order nor did it provide for the survival or continuation of the Debtor's obligations under the Pendente Lite Order. The Divorce Judgment superseded the Pendente Lite Order, and Ms. Berman may not assert a credit for amounts purportedly owed under the Pendente Lite Order.

---

[11] A copy of the Pendente Lite Order is available at ECF Doc. # 32 at ECF pp. 56-62.

At bottom, Ms. Berman remains the sole deeded owner of the Vermont Property. The State Court ruled that the Debtor is entitled to half of the equity in the property and valued that entitlement at **$249,000**. Thus, Ms. Berman's Claim is **reduced** by that amount ("Vermont Property Reduction").

### c. Freedom Entities, Swim Ops, and My Hope Partners

The bulk of Ms. Berman's equitable distribution award came from her share of the Debtor's various business interests for which the State Court assigned valuations. First, the Debtor owns a 50% stake in several entities that lease commercial space to salon service professionals (collectively, the "Freedom Entities"). The State Court largely sided with Ms. Berman's valuation expert and ruled that her share of the Freedom Entities was $871,838.50 in the aggregate. (Amended Decision at 14-19.)

Second, the State Court valued the Debtor's interest in Swim Ops New Jersey LLC ("Swim Ops") – a business that operated a swim school. The State Court ruled that Ms. Berman's share for this entity was valued at $8,250. (*Id.* at 19-20.)

Third, the State Court noted that the Debtor had a 33% stake in a defunct entity called My Hope Partners, Inc. The entity held $3,000 in a bank account, the Debtor is entitled to $1,000 of those funds, and thus, Ms. Berman's 50% share was $500. (*Id.* at 24.)

Thus, Ms. Berman is entitled to assert a claim against the bankruptcy estate for her 50% share in these entities, which totals **$880,588.50** ("Business Entities Credit").

### d. Hope Ventures and 27 Carpenter Avenue

Hope Ventures, LLC ("Hope Ventures") was an entity jointly owned by the Debtor and his brother that acted as a holding company and derives its value from ownership of revenue-generating subsidiaries. (Amended Decision at 20-21.) The State

Court noted that most of the subsidiaries' assets had been sold in recent years to pay for the children's college expenses and other business debts. (*Id.* at 21.) The State Court ruled that the Debtor must either sell Hope Ventures' "remaining property holdings, if any," and evenly split the proceeds with Ms. Berman, or convey 50% of the Debtor's interest in such holdings to Ms. Berman. (*Id.* at 21.)

Hope Ventures wholly-owned an entity called 27 Carpenter Avenue, LLC, which in turn owned real property located at 27 Carpenter Avenue, Middletown, NY ("27 Carpenter Avenue"). In the Amended Decision, the State Court valued 27 Carpenter Avenue at $465,000 because the property had an accepted offer at that price. (*Id.* at 10.) The State Court noted that, while the property generated $40,000 per year in revenue, the monthly debt payments were $3,600, "thus resulting in no profit." (*Id.*) The State Court ruled that Ms. Berman shall be paid 50% of the net sale proceeds payable to the Debtor on account of his ownership interest in 27 Carpenter Avenue, LLC. (*Id.*)

In his reply brief submitted with the Claim Motion, the Debtor states that 27 Carpenter Avenue was sold in May 2024, and he personally did not receive any proceeds from the sale. (Debtor Claim Reply ¶ 14.) Rather, at least some of the sale proceeds were used to satisfy debts of the parent company – Hope Ventures. (*Id.*) It stands to reason that sale proceeds flowing to Hope Ventures would be used to satisfy creditor claims before amounts would be available for distribution to Hope Ventures' shareholders, *i.e.*, the Debtor and his brother. However, the record is devoid of evidence showing how the sale proceeds were distributed. Thus, the Debtor must file an affidavit ("Forthcoming Affidavit") setting forth the recipients of the sale proceeds as well as amounts paid to such recipients.

The Debtor assigned one-half of his ownership interest in the following Hope Ventures subsidiaries to Ms. Berman: (i) Eco-Green Community Housing Fund, LP; (ii) 27 Carpenter Avenue, LLC; (iii) Ellenridge, LLC; and (iv) Ruby Green Ventures, LLC. (*See* Debtor Claim Reply, Exs. A, B, and D (instruments transferring equity to Ms. Berman).) The State Court ruled that one-half of the Debtor's interest in all Hope Ventures' holdings must be transferred to Ms. Berman. (Amended Decision at 21.) Therefore, in the Forthcoming Affidavit, the Debtor must confirm that interests in those subsidiaries constitute the entirety of Hope Ventures' assets as of the entry of the Divorce Judgment.

**e. Debtor's Other Business Interests**

In addition to Hope Ventures subsidiaries, the State Court identified other entities in which the Debtor held an equity stake. The State Court generally observed that the Debtor's business interests were "complex," difficult to value, and often held with other business partners. (*Id.* at 1-2.) The State Court also observed that many of the Debtor's business interests were in the process of being wound down. (*Id.* at 7.) Since no expert valuation was provided for these entities, the State Court generally ruled that the Debtor must either (i) sell his interest and evenly split the proceeds with Ms. Berman, or (ii) assign one-half of his interest to Ms. Berman. This ruling applied to the business entities identified in the Amended Decision as well as any other assets or entities in which the Debtor held an interest. (*Id.* at 26; *see also id.* at 24-25.) The Debtor complied with the State Court's ruling by assigning one-half of his interest in the below entities:

| BUSINESS ENTITY | AMENDED DECISION CITATION | DEBTOR'S ACTION |
|---|---|---|
| EB Ownership LLC | 21-22 | Provided a copy of the State Court's ruling to EB Ownership's counsel who assigned 3.5% of all outstanding shares in Equilibrium Brewery, LLC and 22 Henry Street, LLC to Ms. Berman (*See id.*, Ex. C.)[12] |
| Hope Assets, LLC | 22-23 | Assigned 50% of his interest to Ms. Berman (*See id.*, Ex. D.) |
| Rev Ventures, Inc. | 23 | Assigned 50% of his interest to Ms. Berman (*See id.*, Ex. D.) |
| RCS Holdings, Inc. | N/A | Assigned 50% of his interest to Ms. Berman (*See id.*, Ex. D.) |
| Inspect Your Home, Inc. | N/A | Assigned 50% of his interest to Ms. Berman (*See id.*, Ex. D.) |

Ms. Berman asserts that she is entitled to a greater amount than awarded by the State Court because the State Court did not assign a value to all of the Debtor's business interests. (Ms. Berman Claim Brief ¶¶ 19-33.) But the State Court did not assign a value because neither side provided a valuation for such business entities, many of which were in the process of being wound down. (Amended Decision at 7, 20.) Instead, the State Court allowed the Debtor to assign to Ms. Berman one-half of his interest in those entities, which he has done.

Ms. Berman implies that the failure to value these remaining entities is the fault of the Debtor and his professionals. (Ms. Berman Claim Brief ¶ 19.) But, although she is proceeding *pro se* in this bankruptcy case, Ms. Berman was represented by counsel in the Divorce Action and retained valuation experts for trial. Indeed, on many of the

[12] The State Court awarded 3.75 shares of the brewery entities to Ms. Berman (*see* Amended Decision at 22), but the conveyance instrument assigned 3.5% of all shares to Ms. Berman. (*See* Debtor Reply, Ex. C.) The record does not indicate whether 3.5% of all outstanding shares is equivalent to 3.75 shares. That calculation would depend on the total number of outstanding shares, which is not in the record. As an equity holder, Ms. Berman can raise this issue with EB Ownership if she wishes to do so.

largest marital assets, the State Court credited Ms. Berman's valuation experts and assigned values that were favorable to her. The Divorce Action lasted *four years* and culminated in a *ten-day trial*. Ms. Berman had ample opportunity to assert a value for these remaining entities to the State Court.

**f. Retirement Accounts**

The Amended Decision addressed the division of amounts in retirement accounts. The Debtor had a retirement account with a value of $79,000, and Ms. Berman had a retirement account with a value of $25,000. (*Id.* at 25.) The sum of both accounts was $104,000, and each party was entitled to one-half of that amount, or $52,000. (*Id.*) Consequently, the State Court ruled that the Debtor must pay Ms. Berman $27,000, *i.e.*, the difference between the amount in her retirement account and her one-half entitlement in both accounts. (*Id.*)

In addition to those retirement accounts, the State Court identified a Roth IRA held by Ms. Berman with a balance of $30,000 ("Roth Account"). (*Id.* at 33.) The State Court ruled that the funds in Ms. Berman's Roth Account must be split evenly between the Debtor and Ms. Berman. (*Id.*; *see also* Divorce Judgment at 4.) Ms. Berman has not paid the Debtor his share of the funds in her Roth Account. (Debtor Claim Reply ¶ 18.)[13]

Consequently, Ms. Berman is entitled to assert a claim in the amount calculated by the State Court as the difference between her and the Debtor's retirement accounts ($27,000) *less* half of the value of the Roth Account ($15,000). Ms. Berman's claim

[13] Ms. Berman faults the Debtor for failing to effectuate the split of the Roth Account but does not explain how the Debtor could perform a division of an account held solely by her.

against the bankruptcy estate corresponding to her share in these accounts is **$12,000** ("Retirement Accounts Credit").

**g. Expert Fee Reallocation**

Prior to trial, the State Court awarded Ms. Berman $10,000 in interim expert fees but noted that such award was subject to reallocation at the time of distribution. (Amended Decision at 25.) Distribution was determined at trial, and the State Court reduced Ms. Berman's equitable distribution award by the prior fee award. (*Id.*) Thus, Ms. Berman's Claim against the bankruptcy estate must be **reduced** by **$10,000** ("Expert Fee Reallocation").

**h. Maintenance & Child Support**

Ms. Berman asserts that she is owed $34,687.30 in back child support payments. (Ms. Berman Claim Brief ¶¶ 11-13.) Some context is helpful to frame this assertion. In December 2022, the State Court issued the Pendente Lite Order awarding Ms. Berman temporary maintenance of $4,459.79 per month but denied her request for temporary child support because she was the non-custodial parent. (Amended Decision at 1 (describing Pendente Lite Order).) At some point after the entry of the Pendente Lite Order, the parties agreed to increase the monthly maintenance to $6,200. (*Id.*) The maintenance and child support obligations were resolved in December 2024 by the State Court's issuance of the Original Decision, under which the Debtor was ordered to pay monthly (i) maintenance of $5,250.78 retroactive to December 2022, and (ii) child support of $1,371.98 retroactive to December 2022. (Original Decision at 29-31.) The Amended Decision and Divorce Judgment did not alter these obligations. To establish that he was current as to these obligations, the Debtor submitted a payment ledger showing a history of payments leading up to the filing of the instant Claim Motion.

(Debtor Claim Brief, Ex. F (payment ledger); *see also* Debtor Claim Reply ¶ 7 (stating that the bank statements supporting the ledger are available for review).)

Ms. Berman's argument focuses on the award of child support in December 2024, which applied retroactively to December 2022. The Court will refer to the child support obligations owed for the period between December 2022 and December 2024 as "Retroactive Support Obligations." According to Ms. Berman, pre- and post-December 2024 overpayments by the Debtor on account of his *maintenance* obligations may not be used as a credit against outstanding Retroactive Support Obligations. (Ms. Berman Claim Brief ¶ 13.) Instead, she argues that such overpayments may only be applied to outstanding maintenance obligations. (*Id.*)

This argument is a red herring. The State Court credited the Debtor's pre-December-2024 maintenance overpayments against future maintenance obligations. (*See* Divorce Judgment at 4 ("[The Debtor's] maintenance obligation is $5,250.78 per month . . . retroactive to December 29, 2022, *less amounts already paid in temporary maintenance* . . . .") (emphasis added).) Therefore, assuming that the Debtor had accrued credit for maintenance overpayments before December 2024, all of the payments made after December 2024 would be used to pay the monthly child support and pay down the Retroactive Support Obligations until the overpayment credits ran out. The Debtor need not use the overpayment credits to directly offset the Retroactive Support Obligations, as Ms. Berman suggests. The Debtor may, instead, offset such credits against ongoing maintenance obligations under the Divorce Judgment to reach the same mathematical result.

#### i. Summary of Allowed Claim

Based on the above analysis, and subject to review of the Forthcoming Affidavit, Ms. Berman's Claim is reduced to **$663,412.50** as follows:

| ITEM | AMOUNT PAYABLE TO MS. BERMAN |
|---|---|
| Marital Home Credit | $29,824.00 |
| Business Entities Credit | $880,588.50 |
| Retirement Accounts Credit | $12,000.00 |
| Vermont Property Reduction | ($249,000.00) |
| Expert Fee Reallocation | ($10,000.00) |
| **TOTAL AMOUNT PAYABLE TO MS. BERMAN**[14] | **$663,412.50** |

### 2. Claim Classification

The second branch of the Claim Motion seeks to reclassify the Claim as a general unsecured claim. Ms. Berman asserted that the Claim is a "domestic support obligation," which the Bankruptcy Code defines, in pertinent part, as a debt that is "owed to or recoverable by a spouse . . . in the nature of alimony, maintenance, or support . . . of such spouse . . . without regard to whether such debt is expressly so designated . . . [and] established . . . by reason of applicable provisions of . . . an order of a court of record . . . ." 11 U.S.C. § 101(14A). A claim for domestic support obligation is entitled to priority treatment under 11 U.S.C. § 507(a)(1).

Federal bankruptcy law, rather than state law, governs whether an obligation is a domestic support obligation. *Kantrowitz, Goldhamer & Graifman, P.C. v. Mason* (*In re*

[14] Ms. Berman relies on the equitable distribution award amount set forth in the Original Decision, which was higher than the modified amount awarded under the Amended Decision. (Ms. Berman Claim Brief ¶ 34 (The Original Decision ordered the Debtor to pay "the equitable distribution lump sum at $1,149,412.50 . . . . I stand on that figure.").) But the fact that the State Court issued the Amended Decision moots the award amount set forth in the Original Decision. Indeed, the amounts set forth in the Divorce Judgment track the amounts awarded under the Amended Decision, not the Original Decision.

*Mason*), 545 B.R. 462, 466 (Bankr. S.D.N.Y. 2016) (citation omitted). Courts have consistently held that equitable distribution awards do not constitute domestic support obligations. *See, e.g.*, *In re Budd*, Case No.: 20-21419-ABA, 2021 WL 2326324, at *1 (Bankr. D.N.J. June 7, 2021); *Yao v. Kao* (*In re Kao*), 612 B.R. 272, 286 (Bankr. S.D.N.Y. 2020); *In re Clark*, 441 B.R. 752, 755 (Bankr. M.D.N.C. 2011); *In re Green*, No. 09–17646–SSM, 2010 WL 396253, at *2 n.6 (Bankr. E.D. Va. Jan. 27, 2010); *In re Uzaldin*, 418 B.R. 166, 171 (Bankr. E.D. Va. 2009). Rather than to provide maintenance or support, the purpose of an equitable distribution award is to compensate for the difference between marital interest in property distributed under a divorce decree and property received or retained. *Green*, 2010 WL 396253, at *2 n.6.

Here, as set forth in the prior section, the Claim is based on the State Court's equitable distribution award to Ms. Berman. Therefore, the Claim is not a domestic support obligation under 11 U.S.C. § 101(14A) and must be reclassified as a general unsecured claim.

Ms. Berman argues that the equitable distribution award here should be deemed a domestic support obligation because the State Court took such award into consideration when determining the monthly maintenance payment. (Ms. Berman Claim Brief ¶ 6.) Specifically, the State Court declined to entertain a higher maintenance payment because of Ms. Berman's substantial equitable distribution award:

> Given the substantial distribution award to [Ms. Berman], including a house free of any mortgage indebtedness, in addition to likely more resources when various assets are either sold or an interest provided to her, the Court finds there is no reason in the record to support a departure from the statutory income caps on maintenance or child support.

(Amended Decision at 29.)

Ms. Berman's argument lacks merit. Under New York law, the "distribution of marital property" is among several factors considered when awarding maintenance. *Wortman v. Wortman*, 11 A.D.3d 604, 606 (N.Y. App. Div. 2004). That the State Court considered Ms. Berman's distribution award in determining the Debtor's monthly maintenance payment does not transform the distribution award into a domestic support obligation.

The Court notes, however, that reclassification of the Claim does not materially alter the Debtor's proposed treatment of the Claim. In his proposed plan of reorganization ("Plan"),[15] the Debtor proposes to pay the Claim in full by paying Ms. Berman (i) a portion of the proceeds from the sale of 7 Masters Court, and (ii) monthly payments over seven years. (*See* Plan § 3.2.4.) The Debtor also concedes in the Plan that the Claim is nondischargeable under 11 U.S.C. § 523(a)(15). (*Id.*) A critical component of the Plan is the Debtor's sale of 7 Masters Court, which the Debtor cannot effectuate until Ms. Berman conveys her interest in the property to him. This matter is addressed next.

## B. Conveyance Motion

By the Conveyance Motion, the Debtor seeks the entry of an order compelling Ms. Berman to convey her interest in 7 Masters Court to the Debtor. As stated, the Divorce Judgment plainly mandated that Ms. Berman convey her interest within 30 days (Divorce Judgment at 2), and such conveyance is necessary to effectuate the Debtor's Plan.

---

[15] The Plan is available at ECF Doc. # 33-1.

The Debtor relies on 11 U.S.C. § 105(a) in support of the Conveyance Motion, which allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. Although section 105(a) allows this Court to exercise broad equitable powers, such powers "can only be exercised within the confines of the Bankruptcy Code." *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 92 (2d Cir. 2003) (citation and internal quotation marks omitted). "It does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Id.* (citation and internal quotation marks omitted). Here, the Debtor has not identified a right under the Bankruptcy Code, which would compel Ms. Berman to convey her interest in 7 Masters Court absent commencement of a formal adversary proceeding.

Nonetheless, the Debtor is not without recourse. The State Court awarded "sole title" in 7 Masters Court to the Debtor and directed Ms. Berman to convey her interest in the property by April 13, 2025. (Divorce Judgment at 2.) The State Court's award of a one-half equitable share to Ms. Berman was premised on her conveying her interest to the Debtor. So long as Ms. Berman continues to violate the State Court's mandate to convey her one-half interest, she is not entitled to the corresponding credit for her one-half equitable share of $294,824 in the property.

Therefore, so long as Ms. Berman refuses to convey her interest in 7 Masters Court, her Claim must be further **reduced** by **$294,824**.

## **CONCLUSION**

For the reasons stated, and subject to the Court's review of the Debtor's Forthcoming Affidavit, (i) the amount of the Claim is reduced from $1,213,923.80 to **$368,588.50**, and (ii) the Claim is reclassified as a general unsecured claim. The parties are scheduled to appear before the Court on other matters on October 13, 2026. Debtor's counsel should be prepared to discuss the entry of an order resolving the Motions at such hearing.

**Dated: October 7, 2026**
**Poughkeepsie, New York**

**/s/ Kyu Y. Paek**

**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**